UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **March First Manufacturing, LLC** | : | Case No. _____ |
| 7885 East Kemper Road | : | |
| Cincinnati, Ohio 45249 | : | Judge: _____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| **OTR Distillers, LLC** | : | **COMPLAINT FOR** |
| **dba Northern Row Brewery** | : | **TRADEMARK INFRINGEMENT,** |
| 111 West McMicken Ave. | : | **UNFAIR COMPETITION, AND** |
| Cincinnati, Ohio 45202 | : | **DECEPTIVE TRADE PRACTICES** |
| | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |
| | : | |

Plaintiff March First Manufacturing, LLC ("March First" or "Plaintiff") states for its Complaint against Defendant, OTR Distillers, LLC dba Northern Row Brewery ("Northern Row" or "Defendant"), as follows:

## NATURE OF THE CLAIMS

1. This is an action for trademark infringement under the Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. § 1114; unfair competition pursuant to 15 U.S.C. § 1125(a); deceptive trade practices under Ohio Revised Code § 4165.01 et seq.; trademark infringement under the common law of the State of Ohio; and unfair competition under the common law of the State of Ohio.

1

**PARTIES**

2. Plaintiff March First is an Ohio Limited Liability Company with a principal business address located at 7885 East Kemper Road, Cincinnati, Ohio 45249.

3. Upon information and belief, Defendant Northern Row is an Ohio Limited Liability Company with a principal business address located at 111 West McMicken Ave., Cincinnati, Ohio 45202.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over this litigation because the action arises under 15 U.S.C. §§ 1051-1141 of the Lanham Act, and jurisdiction is proper in accordance with 15 U.S.C. § 1121 and 28 U.S.C. §§ 1338(a) and (b). Additionally, this Court has pendant, ancillary and/or supplemental jurisdiction over the state law claims asserted in this litigation pursuant to 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Northern Row because Northern Row's principal place of business is located in Hamilton County, Ohio, Northern Row is incorporated under the laws of Ohio, Northern Row's products can be and have been sold in the Southern District of Ohio, and the effects of Northern Row's unlawful conduct are felt in the Southern District of Ohio.

6. Furthermore, venue is appropriate in this Court in accordance with 28 U.S.C. § 1391(b) as a result of Northern Row's maintaining its principal place of business in Hamilton County, Ohio.

**FACTUAL BACKGROUND**

**March First's Use and Registration of the CINCINNATI DISTILLING Trademark**

7. Founded in March 2016, March First is a brewery, cidery, and distillery based in Cincinnati, Ohio, whose name pays homage to the State of Ohio, founded March 1, 1803.

8. March First begin self-distributing beer to local bars and restaurants in the Cincinnati area by March 1, 2017.

9. Subsequently, March First began distilling spirits, including, bourbon, whiskey, gin, vodka, brandy, rum, and agave sprits, initially under the name "Sycamore Distilling."

10. By September 23, 2020, March First rebranded its distilling operations from "Sycamore Distilling" to CINCINNATI DISTILLING, beginning a family of marks and uses in the alcohol and spirits industry prominently making use of CINCINNATI.

11. To protect its name, on October 5, 2020, March First filed a federal trademark application with the United States Patent and Trademark Office ("USPTO") for the CINCINNATI DISTILLING & Design mark under Section 1(b) of the Trademark Act, which was assigned U.S. Application Serial No. 90235413.

12. On July 28, 2021, March First filed a Statement of Use with the USPTO, asserting September 28, 2020 as the date the CINCINNATI DISTILLING & Design mark was first used in United States commerce, which was accepted by the US Trademark Office.

13. On October 12, 2021, the USPTO issued U.S. Registration No. 6522220 for March First's CINCINNATI DISTILLING & Design mark under Section 1(a) of the Lanham Act covering *Bourbon, Whiskey, Gin, Agave Spirit, Brandy, Vodka, and Rum*. (collectively the registration and all common law rights thereto, including to the word mark CINCINNATI

DISTILLING, are referred as the "CINCINNATI DISTILLING Mark"). A copy of the certificate of registration for the CINCINNATI DISTILLING Mark is attached hereto as **Exhibit A**.

14. Since use first began in September 2020, March First has made extensive use of its popular CINCINNATI DISTILLING Mark not only within this district but throughout the United States. In connection therewith, March First has sold spirits branded with the CINCINNATI DISTILLING Mark to numerous bars, restaurants, and shops, and other commercial locations where sprits are served throughout the United States, including, but not limited to, locations in Ohio, Kentucky, Michigan, Illinois, Pennsylvania, and Florida.

15. Likewise, March First has attended numerous trade shows and competitions under the CINCINNATI DISTILLING Mark, including the 2020-2023 U.S. Open Whiskey and Spirits Championship, where it has won a number of awards, including the 2023 Grand National Champion, and Best Overall Whiskey Distillery in the United States, in addition to at least ten medals for its individual spirits. A list of the 2023 U.S. Open Whiskey and Spirits Championship Medal Winners is attached hereto as **Exhibit B**.

16. March First continues to produce and sell distilled spirits throughout the United States, and consumers have come to recognize March First as the source for such products under the CINCINNATI DISTILLING Mark.

17. On November 18, 2022, March First hosted a grand opening for the new location for its operations within the historic Millcroft Inn complex in Milford, Ohio under the CINCINNATI DISTILLING Mark.

18. In addition to its distilling operations, the March First location in the Millcroft Inn complex in Milford, Ohio also features a restaurant by using its CINCINNATI DISTILLING Mark where it exclusively serves its spirits all branded under the CINCINNATI DISTILLING Mark. A

screenshot of the cocktail menu for the CINCINNATI DISTILLING restaurant is attached hereto as **Exhibit C**, showing CINCINNATI DISTILLING spirits featured on the menu.

19. March First also owns a family of trademarks comprising the term "CINCINNATI" or "CINCY" for alcoholic beverages building on its distinctive CINCINNATI DISTILLING Mark. These include: U.S. Registration No. 6734827 for CINCINNATI BREWING CO. & Design in connection with *Beer not relating to sports or a sports team, league, mascot or stadium*; and U.S. Registration No. 6874955 for CINCY BREWING CO. & Design in connection with *beer* (hereinafter the "CINCINNATI BREWING Marks"). Copies of the certificates of registration for these additional registrations are attached hereto as **Exhibit D**.

20. In addition to its family of trademark registrations, March First has also used the CINCINNATI DISTILLING Mark in commerce as a trademark in connection with its distilling operations, restaurant, and spirits since at least as early as September 28, 2020, and has accrued enforceable common law rights in the CINCINNATI DISTILLING Mark, particularly within this district. Representative examples of March First's use of the CINCINNATI DISTILLING Mark are attached hereto as **Exhibit E**.

21. Indeed, March First has received significant media attention and has been referenced or featured numerous in non-solicited articles referring to March First's distilling operations and goods produced thereto as "Cincinnati Distilling," including being named to CityBeat Magazine's notorious "Best of Cincinnati" list. Representative samples of such articles are attached hereto as **Exhibit F**.

22. As a result of March First's extensive use, sales, advertising, promotional activities, distribution, and the unsolicited media attention and awards from such efforts throughout the United States, March First's CINCINNATI DISTILLING Mark has become well-known and

accepted by the public, particularly within this district, and serves to distinguish March First's goods and services from those of others.

23. Additionally, the CINCINNATI DISTILLING Mark is a member of a recognized family of trademarks comprising the term "CINCINNATI" or "CINCY" for alcoholic beverages by March First, including the CINCINNATI BREWING Marks. The CINCINNATI DISTILLING Mark shares a common characteristic as the CINCINNATI BREWING Marks intentionally to build additional consumer goodwill, and have been promoted by March First as to create recognition among the purchasing public as a source identifier, such that the CINCINNATI DISTILLING Mark would be recognized by the public as part of its family of marks and as representing March First alone.

24. Accordingly, the CINCINNATI DISTILLING Mark has become distinctive as applied to March First's goods, and has acquired secondary meaning to the relevant public as a source identifier to identify March First as the source of its goods, particularly within this district.

### Northern Row's Infringement of the CINCINNATI DISTILLING Mark

25. Upon information and belief, Northern Row is a brewery and distillery based in Cincinnati, Ohio.

26. Upon information and belief, Northern Row is a direct competitor of March First, in that they sell competing products to the same consumers in the exact same geographic area as March First.

27. Upon information and belief, in April 2023, Northern Row announced the upcoming release of a distilled spirit under the name "Cincinnati Gin."

28. Upon information and belief, in April 2023, Northern Row began distributing a product by the name "Cincinnati Gin" to bars, restaurants, and shops, and other commercial locations where spirits are served in the United States.

29. The front label for the "Cincinnati Gin" product distributed by Northern Row prominently features the term "CINCINNATI GIN" in large block letters in a manner that shares visual similarities with March First's CINCINNATI DISTILLING Mark, as shown below.

 

**Northern Row's Use**        **March First's Use**

30. In each instance shown above, the overlapping term "Cincinnati" is shown in a capitalized, block-style font that would appear visually similar to consumers at a glance, and prominently feature the use of tree foliage in the respective designs.

31. The neck label for the "Cincinnati Gin" product distributed by Northern Row also prominently features the term "CINCINNATI GIN" in block letters, which shares visual similarities with March First's prior use of the CINCINNATI DISTILLING Mark in commerce, as shown below.

 

**Northern Row's Use**        **March First's Use**

7

32. Upon information and belief, given the lack of any other identifying markings or trademarks on the "Cincinnati Gin" product, the manner in which the term "Cincinnati Gin" appears on the product distributed by Northern Row would be seen by consumers as having source identifying significance.

33. Northern Row's use of "Cincinnati Gin" as a trademark in connection with a distilled spirit has begun to cause actual confusion in the marketplace with the CINCINNATI DISTILLING Mark.

34. For example, consumers for March First's distilled spirits have sent messages to March First on social media inquiring whether March First is affiliated with and/or produced the "Cincinnati Gin" product. Copies of social media messages from March First's consumers are attached hereto as **Exhibit G**.

35. Additionally, evidence of actual confusion was also broadcast on the Mike McConnell Show on 700 WLW on April 21, 2023, where Mr. McConnell commented that "Cincinnati Gin" was the brand of the Northern Row product, stating "Cincinnati, that's gonna be the… what's on the bottle, that's the brand, 'Cincinnati Gin.'" Immediately after making this statement, Mr. McConnell further commented that someone was already making a product called "Cincinnati Bourbon," and inquired who made the product, in apparent confusion due to the similarity of the names.

36. The statement by Mr. McConnell in Paragraph 35 above, shows (1) that consumers would recognize "Cincinnati Gin" as a source identifier for the product, and (2) that given the similarity of the marks, the use of "Cincinnati Gin" by Northern Row as the trademark for its product would lead, and has lead, to consumer confusion.

37. Northern Row was either actually aware of and/or constructively aware of March First's CINCINNATI DISTILLING Mark by virtue of March First's timely registration when Northern Row began offering products under the "Cincinnati Gin" trademark.

38. Upon information and belief, Northern Row intends to free ride on the goodwill associated with March First's CINCINNATI DISTILLING Mark in order to confuse and deceive consumers in the marketplace into the mistaken belief that Northern Row is associated with or connected to March First.

39. March First has not consented to Northern Row's manufacture, sale, and/or distribution of products under "Cincinnati Gin" or any other similarly confusing mark.

40. On April 11, 2023, after learning of Northern Row's planned release of a distilled spirit under the "Cincinnati Gin" trademark, but before the product was officially released, representatives from March First met with Northern Row to discuss its concerns over the use of the name "Cincinnati Gin" and the possibility of consumer confusion with the CINCINNATI DISTILLING Mark.

41. The same day, on April 11, 2023, March First received an email from a representative of Northern Row, indicating that while Northern Row understands the issues raised by March First, Northern Row will be moving forward with the planned release of the distilled spirit under the "Cincinnati Gin" trademark. A true copy of the April 11, 2023 email from Northern Row is attached hereto as **Exhibit H**.

42. On April 18, 2023, counsel for March First sent a letter to Northern Row detailing March First's rights in the CINCINNATI DISTILLING Mark and CINCINNATI BREWING Marks, and demanding that Northern Row cease use of "Cincinnati Gin" as a trademark in connection with distilled spirits. In the letter, March First also stated that it is willing to come to

an amicable resolution if Northern Row would make changes to the usage of "Cincinnati Gin" on the product label such that the term would not be viewed by consumers with source identifying significance, in order to avoid the possibility of confusion with the CINCINNATI DISTILLING Mark. A true copy of the April 18, 2023 letter is attached hereto as **Exhibit I**.

43. On April 27, 2023, counsel for March First received an email from counsel for Northern Row, confirming receipt of the April 18, 2023 letter, and stating that Northern Row denies that there is any likelihood of confusion, and declines March First's suggestion to change its product name or label. A true copy of the April 27, 2023 email from counsel for Northern Row is attached hereto as **Exhibit J**.

**COUNT I**
**INFRINGEMENT OF REGISTERED TRADEMARK**
**(15 U.S.C. §§ 1114)**

44. March First incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

45. March First owns all registered and common law rights in the CINCINNATI DISTILLING Mark. March First's use and registration of the CINCINNATI DISTILLING Mark has priority over Northern Row's use of "Cincinnati Gin" as a trademark for a distilled spirit.

46. Under 15 U.S.C. § 1115, the registration of the CINCINNATI DISTILLING Mark is *prima facie* evidence of the validity of the mark and of March First's exclusive right to use the CINCINNATI DISTILLING Mark in commerce.

47. March First owns all registered and common law rights in its family of marks, including the CINCINNATI BREWING Marks, each of which have priority over Northern Row's use of "Cincinnati Gin" as a trademark for a distilled spirit.

10

48. As a result of March First's extensive use, sales, advertising, promotional activities, distribution, and the unsolicited media attention and awards from such efforts throughout the United States, March First's CINCINNATI DISTILLING Mark has become well known and accepted by the public and serve to distinguish March First's goods from those of others..

49. Northern Row's use of "Cincinnati Gin" as a trademark in commerce in connection with goods that are identical to those offered and registered under the CINCINNATI DISTILLING Mark, is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of Northern Row with March First as to the origin, sponsorship, or approval of Northern Row's goods or services and constitutes a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

50. Northern Row's use of "Cincinnati Gin" as a trademark in commerce in connection with goods that are closely related to those offered under the CINCINNATI BREWING Marks, is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of Northern Row with March First as to the origin, sponsorship, or approval of Northern Row's goods or services and constitutes a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

51. Northern Row's conduct has caused, and will continue to cause March First to suffer severe, immediate and irreparable injury for which March First has no adequate remedy at law unless Northern Row is enjoined pursuant to 15 U.S.C. § 1116.

52. As a result of Northern Row's conduct, March First has been harmed and will continue to be harmed. Accordingly, March First is entitled to recover its damages, including Northern Row's profits received as a result of its infringing activities, pursuant to 15 U.S.C. § 1117(a).

53. Damages alone will not provide March First with an adequate remedy at law.

11

## COUNT II
### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

54. March First incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

55. March First has expended substantial resources, including time and money in building the CINCINNATI DISTILLING Mark, and all associated goods and services thereto, and as a result, the public has come to associate the CINCINNATI DISTILLING Mark with March First, and use those marks to identify March First as the source of March First's products.

56. The continued use by Northern Row of "Cincinnati Gin" as set forth above constitutes unfair competition and violation of the federal Lanham Act, 15 U.S.C. § 1125(a), and violation of March First's exclusive rights to exploit the CINCINNATI DISTILLING Mark.

57. The foregoing conduct of Northern Row further constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

58. Northern Row has unjustly profited by its unlawful actions.

59. Upon information and belief, Northern Row has committed the foregoing acts with notice of March First's rights and such actions were willful and intended to cause confusion, to cause mistake, or to deceive

60. March First has been and will continue to be damaged by Northern Row's unlawful actions.

61. Northern Row's conduct and acts, as alleged above, will continue to cause irreparable harm to March First unless enjoined by the Court.

62. Damages alone will not provide March First with an adequate remedy at law.

12

## COUNT III
**OHIO UNIFORM DECEPTIVE TRADE PRACTICES ACT**

63. March First hereby incorporates by reference the preceding paragraphs as if fully restated herein.

64. Upon information and belief, Northern Row's use of "Cincinnati Gin" as a trademark for a distilled spirits, with actual or constructive knowledge of March First's rights in the CINCINNATI DISTILLING Mark is a willful violation of the Ohio Uniform Deceptive Trade Practices Act, Ohio Revised Code §4165.02, by causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, affiliation, connection or association with March First.

65. Upon information and belief, Northern Row's acts of infringement have been committed with the intent to cause confusion and mistake and to deceive.

66. March First has been and will continue to be damaged by Northern Row's unlawful actions.

67. Northern Row's conduct and acts, as alleged above, will continue to cause irreparable harm to March First as to which it has no adequate remedy at law, unless enjoined by this Court.

## COUNT IV
**COMMON LAW TRADEMARK INFRINGEMENT**

68. March First hereby incorporates by reference the preceding paragraphs as if fully restated herein.

69. Northern Row's use of "Cincinnati Gin" as described herein constitutes trademark infringement under the common law of the State of Ohio.

70. Upon information and belief, Northern Row's acts of infringement are willful and have been committed with the intent to cause confusion and mistake and to deceive.

71. March First has been and will continue to be damaged by Northern Row's infringement.

72. Northern Row's conduct and acts, as alleged above, will continue to cause irreparable harm to March First as to which it has no adequate remedy at law, unless enjoined by this Court.

## COUNT V
## COMMON LAW UNFAIR COMPETITION

73. March First hereby incorporates by reference the preceding paragraphs as if fully restated herein.

74. Upon information and belief, the acts described above, namely, Northern Row's use of "Cincinnati Gin" as a trademark in connection with distilled spirits, with actual or constructive knowledge of March First's rights in the CINCINNATI DISTILLING Mark, reflect Northern Row's scheme by which it, without authority, consent or privilege, intended to imitate or pass off its goods as those of March First or as goods that have received the sponsorship or approval of March First. Such conduct constitutes unfair competition in violation of the common law of the State of Ohio.

75. Upon information and belief, Northern Row's alleged acts of infringement are willful and have been committed with the intent to cause confusion and mistake and to deceive.

76. March First has been and will continue to be damaged by Northern Row's unfair competition.

77. Northern Row's conduct and acts, as alleged above, will continue to cause irreparable harm to March First as to which it has no adequate remedy at law, unless enjoined by this Court.

## **PRAYER FOR RELIEF**

**WHEREFORE,** March First respectfully demands judgment against Northern Row as follows:

(1) Restraining and enjoining Northern Row, permanently and preliminarily during the pendency of this action, together with Northern Row's officers, agents, members, employees, successors and assigns, and all those in privity and/or acting in concert with them, from advertising, selling, marketing, or distributing Northern Row's goods and services, including but not limited to distilled spirits, under the "Cincinnati Gin" trademark;

(2) Awarding March First its monetary damages, including actual damages sustained as a result of Northern Row's infringement of the CINCINNATI DISTILLING Mark and other unlawful conduct set forth herein, together with an accounting of Northern Row's profits, as provided in 15 U.S.C. § 1117, and Ohio common law, all in amounts to be determined at trial;

(4) Awarding March First its costs and reasonable attorneys' fees and expert witness fees in this action;

(5) That Northern Row be required to deliver up for destruction all advertising and promotional materials, all packaging materials, and all business documents, including labels, cartons, brochures, business stationary, calling cards, information sheets, posters, signs, and any other printed or graphic materials of any type, including the plates, molds or other means of producing the materials, which bear reference to confusingly similar imitations of March First's CINCINNATI DISTILLING Mark; and

(10) Granting March First such other and further relief as the Court may deem just and equitable.

Dated: May 26, 2023            Respectfully submitted,

<u>/S/ April L. Besl</u>
April L. Besl
DINSMORE & SHOHL LLP
255 East Fifth Street
Cincinnati, OH 45202
(513) 977-8527 phone / (513) 977-8141 fax
april.besl@dinsmore.com
*Attorneys for Plaintiff*
*March First Manufacturing, LLC*