**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| **March First Manufacturing, LLC,** | : | Case. No. 1:23-cv-00326-DRC |
| | : | |
| *Plaintiff,* | : | Judge: Douglas R. Cole |
| | : | |
| **OTR Distillers, LLC** | : | |
| **dba Northern Row Brewery,** | : | |
| | : | |
| *Defendant.* | | |

## **DEFENDANT OTR DISTILLERS, LLC'S ANSWER AND COUNTERCLAIM**

OTR Distillers, LLC dba Northern Row Brewery ("Northern Row"), through undersigned counsel, pleads as follows in response to the matters alleged in the Complaint (Dkt. 1) ("Complaint") filed by March First Manufacturing, LLC ("March First" or "Plaintiff"):

## **NATURE OF THE CLAIMS**

1.     This is an action for trademark infringement under the Trademark Act of 1946 (the "Lanham Act"), as amended, 15 U.S.C. § 1114; unfair competition pursuant to 15 U.S.C. § 1125(a); deceptive trade practices under Ohio Revised Code § 4165.01 et seq.; trademark infringement under the common law of the State of Ohio; and unfair competition under the common law of the State of Ohio.

**Answer:**  Northern Row admits the allegations of paragraph 1 of March First's Complaint to the extent they describe the causes of action raised by March First.  Northern Row denies any alleged wrongdoing.

## THE PARTIES

2.      Plaintiff March First is an Ohio Limited Liability Company with a principal

business address located at 7885 East Kemper Road, Cincinnati, Ohio 45249.

**Answer:**  Northern Row admits the allegations of paragraph 2 of March First's

Complaint.


3.      Upon information and belief, Defendant Northern Row is an Ohio Limited

Liability Company with a principal business address located at 111 West McMicken Ave.,

Cincinnati, Ohio 45202.

**Answer:**  Northern Row admits the allegations of paragraph 3 of March First's

Complaint.


## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this litigation because the action arises under 15

U.S.C. §§ 1051-1141 of the Lanham Act, and jurisdiction is proper in accordance with 15 U.S.C.

§ 1121 and 28 U.S.C. §§ 1338(a) and (b). Additionally, this Court has pendant, ancillary and/or

supplemental jurisdiction over the state law claims asserted in this litigation pursuant to 28

U.S.C. § 1367.

**Answer:**  Northern Row admits the allegations of paragraph 4 of March First's

Complaint.


5.      This Court has personal jurisdiction over Northern Row because Northern Row's

principal place of business is located in Hamilton County, Ohio, Northern Row is incorporated

under the laws of Ohio, Northern Row's products can be and have been sold in the Southern

District of Ohio, and the effects of Northern Row's unlawful conduct are felt in the Southern

District of Ohio

**Answer:** Northern Row admits this Court has personal jurisdiction over Northern Row,

but denies that Northern Row has engaged in any unlawful conduct and denies any effects of any

alleged unlawful conduct.

6.     Furthermore, venue is appropriate in this Court in accordance with 28 U.S.C. §

1391(b) as a result of Northern Row's maintaining its principal place of business in Hamilton

County, Ohio.

**Answer:** Northern Row admits the allegations of paragraph 6 of March First's

Complaint.

## FACTUAL BACKGROUND

### March First's Use and Registration of the CINCINNATI DISTILLING Trademark

7.     Founded in March 2016, March First is a brewery, cidery, and distillery based in

Cincinnati, Ohio, whose name pays homage to the State of Ohio, founded March 1, 1803.

**Answer:** Northern Row lacks sufficient knowledge or information to form a belief as to

the truth of the allegations contained in Paragraph 7 of the Complaint and, therefore, denies such

allegations.

8.     March First begin self-distributing beer to local bars and restaurants in the

Cincinnati area by March 1, 2017.

3

**Answer:**  Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint and, therefore, denies such allegations.

9.      Subsequently, March First began distilling spirits, including, bourbon, whiskey, gin, vodka, brandy, rum, and agave sprits, initially under the name "Sycamore Distilling."

**Answer:**  Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 9 of the Complaint and, therefore, denies such allegations.

10.      By September 23, 2020, March First rebranded its distilling operations from "Sycamore Distilling" to CINCINNATI DISTILLING, beginning a family of marks and uses in the alcohol and spirits industry prominently making use of CINCINNATI.

**Answer:**  Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 10 of the Complaint and, therefore, denies such allegations.

11.      To protect its name, on October 5, 2020, March First filed a federal trademark application with the United States Patent and Trademark Office ("USPTO") for the CINCINNATI DISTILLING & Design mark under Section 1(b) of the Trademark Act, which was assigned U.S. Application Serial No. 90235413.

**Answer:**  Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint and, therefore, denies

such allegations.

12.     On July 28, 2021, March First filed a Statement of Use with the USPTO, asserting September 28, 2020 as the date the CINCINNATI DISTILLING & Design mark was first used in United States commerce, which was accepted by the US Trademark Office.

**Answer:**  Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint and, therefore, denies such allegations.

13.     On October 12, 2021, the USPTO issued U.S. Registration No. 6522220 for March First's CINCINNATI DISTILLING & Design mark under Section 1(a) of the Lanham Act covering *Bourbon, Whiskey, Gin, Agave Spirit, Brandy, Vodka, and Rum*. (collectively the registration and all common law rights thereto, including to the word mark CINCINNATI DISTILLING, are referred as the "CINCINNATI DISTILLING Mark"). A copy of the certificate of registration for the CINCINNATI DISTILLING Mark is attached hereto as **Exhibit A**.

**Answer:**  Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint and, therefore, denies such allegations.

14.     Since use first began in September 2020, March First has made extensive use of its popular CINCINNATI DISTILLING Mark not only within this district but throughout the United States. In connection therewith, March First has sold spirits branded with the CINCINNATI DISTILLING Mark to numerous bars, restaurants, and shops, and other commercial locations

where sprits are served throughout the United States, including, but not limited to, locations in Ohio, Kentucky, Michigan, Illinois, Pennsylvania, and Florida.

**Answer:** Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 14 of the Complaint and, therefore, denies such allegations.

15.     Likewise, March First has attended numerous trade shows and competitions under the CINCINNATI DISTILLING Mark, including the 2020-2023 U.S. Open Whiskey and Spirits Championship, where it has won a number of awards, including the 2023 Grand National Champion, and Best Overall Whiskey Distillery in the United States, in addition to at least ten medals for its individual spirits. A list of the 2023 U.S. Open Whiskey and Spirits Championship Medal Winners is attached hereto as **Exhibit B**.

**Answer:** Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 15 of the Complaint and, therefore, denies such allegations.

16.     March First continues to produce and sell distilled spirits throughout the United States, and consumers have come to recognize March First as the source for such products under the CINCINNATI DISTILLING Mark.

**Answer:** Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and, therefore, denies such allegations.

17.     On November 18, 2022, March First hosted a grand opening for the new location for its operations within the historic Millcroft Inn complex in Milford, Ohio under the CINCINNATI DISTILLING Mark.

**Answer:** Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 17 of the Complaint and, therefore, denies such allegations.

18.     In addition to its distilling operations, the March First location in the Millcroft Inn complex in Milford, Ohio also features a restaurant by using its CINCINNATI DISTILLING Mark where it exclusively serves its spirits all branded under the CINCINNATI DISTILLING Mark. A screenshot of the cocktail menu for the CINCINNATI DISTILLING restaurant is attached hereto as **Exhibit C**, showing CINCINNATI DISTILLING spirits featured on the menu.

**Answer:** Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 18 of the Complaint and, therefore, denies such allegations.

19.     March First also owns a family of trademarks comprising the term "CINCINNATI" or "CINCY" for alcoholic beverages building on its distinctive CINCINNATI DISTILLING Mark. These include: U.S. Registration No. 6734827 for CINCINNATI BREWING CO. & Design in connection with *Beer not relating to sports or a sports team, league, mascot or stadium*; and U.S. Registration No. 6874955 for CINCY BREWING CO. & Design in connection with *beer* (hereinafter the "CINCINNATI BREWING Marks"). Copies of the certificates of registration for these additional registrations are attached hereto as **Exhibit D**.

**Answer:**  Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 19 of the Complaint and, therefore, denies such allegations.

20.     In addition to its family of trademark registrations, March First has also used the CINCINNATI DISTILLING Mark in commerce as a trademark in connection with its distilling operations, restaurant, and spirits since at least as early as September 28, 2020, and has accrued enforceable common law rights in the CINCINNATI DISTILLING Mark, particularly within this district. Representative examples of March First's use of the CINCINNATI DISTILLING Mark are attached hereto as **Exhibit E**.

**Answer:**  Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 20 of the Complaint and, therefore, denies such allegations.

21.     Indeed, March First has received significant media attention and has been referenced or featured numerous in non-solicited articles referring to March First's distilling operations and goods produced thereto as "Cincinnati Distilling," including being named to CityBeat Magazine's notorious "Best of Cincinnati" list. Representative samples of such articles are attached hereto as **Exhibit F**.

**Answer:**  Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 21 of the Complaint and, therefore, denies such allegations.

22.     As a result of March First's extensive use, sales, advertising, promotional activities, distribution, and the unsolicited media attention and awards from such efforts throughout the United States, March First's CINCINNATI DISTILLING Mark has become well-known and accepted by the public, particularly within this district, and serves to distinguish March First's goods and services from those of others.

**Answer:**  Northern Row denies the allegations of paragraph 22 of March First's Complaint.

23.     Additionally, the CINCINNATI DISTILLING Mark is a member of a recognized family of trademarks comprising the term "CINCINNATI" or "CINCY" for alcoholic beverages by March First, including the CINCINNATI BREWING Marks. The CINCINNATI DISTILLING Mark shares a common characteristic as the CINCINNATI BREWING Marks intentionally to build additional consumer goodwill, and have been promoted by March First as to create recognition among the purchasing public as a source identifier, such that the CINCINNATI DISTILLING Mark would be recognized by the public as part of its family of marks and as representing March First alone.

**Answer:**  Northern Row denies the allegations of paragraph 23 of March First's Complaint.

24.     Accordingly, the CINCINNATI DISTILLING Mark has become distinctive as applied to March First's goods, and has acquired secondary meaning to the relevant public as a source identifier to identify March First as the source of its goods, particularly within this district.

**Answer:**  Northern Row denies the allegations of paragraph 24 of March First's Complaint.

## Northern Row's Infringement of the CINCINNATI DISTILLING Mark

25.     Upon information and belief, Northern Row is a brewery and distillery based in Cincinnati, Ohio.

**Answer:**  Northern Row admits the allegations of paragraph 25 of March First's Complaint.

26.     Upon information and belief, Northern Row is a direct competitor of March First, in that they sell competing products to the same consumers in the exact same geographic area as March First.

**Answer:**  Northern Row denies the allegations of paragraph 26 of March First's Complaint.

27.     Upon information and belief, in April 2023, Northern Row announced the upcoming release of a distilled spirit under the name "Cincinnati Gin."

**Answer:**  Northern Row admits the allegations of paragraph 27 of March First's Complaint.

28.     Upon information and belief, in April 2023, Northern Row began distributing a product by the name "Cincinnati Gin" to bars, restaurants, and shops, and other commercial locations where spirits are served in the United States.

**Answer:** Northern Row admits the allegations of paragraph 28 of March First's Complaint.

29.     The front label for the "Cincinnati Gin" product distributed by Northern Row prominently features the term "CINCINNATI GIN" in large block letters in a manner that shares visual similarities with March First's CINCINNATI DISTILLING Mark, as shown below.

 

**Northern Row's Use**          **March First's Use**

**Answer:** Northern Row denies the allegations of paragraph 29 of March First's Complaint.

30.     In each instance shown above, the overlapping term "Cincinnati" is shown in a capitalized, block-style font that would appear visually similar to consumers at a glance, and prominently feature the use of tree foliage in the respective designs.

**Answer:** Northern Row denies the allegations of paragraph 30 of March First's Complaint.

31.     The neck label for the "Cincinnati Gin" product distributed by Northern Row also prominently features the term "CINCINNATI GIN" in block letters, which shares visual similarities with March First's prior use of the CINCINNATI DISTILLING Mark in commerce, as shown below.

  

**Northern Row's Use**       **March First's Use**

**Answer:** Northern Row denies the allegations of paragraph 31 of March First's Complaint.


32.     Upon information and belief, given the lack of any other identifying markings or trademarks on the "Cincinnati Gin" product, the manner in which the term "Cincinnati Gin" appears on the product distributed by Northern Row would be seen by consumers as having source identifying significance.

**Answer:** Northern Row denies the allegations of paragraph 32 of March First's Complaint.


33.     Northern Row's use of "Cincinnati Gin" as a trademark in connection with a distilled spirit has begun to cause actual confusion in the marketplace with the CINCINNATI DISTILLING Mark.

**Answer:** Northern Row denies the allegations of paragraph 33 of March First's Complaint.

34.     For example, consumers for March First's distilled spirits have sent messages to March First on social media inquiring whether March First is affiliated with and/or produced the "Cincinnati Gin" product. Copies of social media messages from March First's consumers are attached hereto as **Exhibit G**.

**Answer:** Northern Row denies the allegations of paragraph 34 of March First's Complaint.

35.     Additionally, evidence of actual confusion was also broadcast on the Mike McConnell Show on 700 WLW on April 21, 2023, where Mr. McConnell commented that "Cincinnati Gin" was the brand of the Northern Row product, stating "Cincinnati, that's gonna be the... what's on the bottle, that's the brand, 'Cincinnati Gin.'" Immediately after making this statement, Mr. McConnell further commented that someone was already making a product called "Cincinnati Bourbon," and inquired who made the product, in apparent confusion due to the similarity of the names.

**Answer:** Northern Row denies the allegations of paragraph 35 of March First's Complaint.

36.     The statement by Mr. McConnell in Paragraph 35 above, shows (1) that consumers would recognize "Cincinnati Gin" as a source identifier for the product, and (2) that given the similarity of the marks, the use of "Cincinnati Gin" by Northern Row as the trademark for its product would lead, and has led, to consumer confusion.

**Answer:** Northern Row denies the allegations of paragraph 36 of March First's Complaint.

37. Northern Row was either actually aware of and/or constructively aware of March First's CINCINNATI DISTILLING Mark by virtue of March First's timely registration when Northern Row began offering products under the "Cincinnati Gin" trademark.

**Answer:**  Northern Row denies the allegations of paragraph 37 of March First's Complaint.

38. Upon information and belief, Northern Row intends to free ride on the goodwill associated with March First's CINCINNATI DISTILLING Mark in order to confuse and deceive consumers in the marketplace into the mistaken belief that Northern Row is associated with or connected to March First.

**Answer:**  Northern Row denies the allegations of paragraph 38 of March First's Complaint.

39. March First has not consented to Northern Row's manufacture, sale, and/or distribution of products under "Cincinnati Gin" or any other similarly confusing mark.

**Answer:**  Northern Row admits that March First has not consented to Northern Row's manufacture, sale, and/or distribution of products under "Cincinnati Gin."  Northern Row denies the remaining allegations of paragraph 39 of March First's Complaint.

40. On April 11, 2023, after learning of Northern Row's planned release of a distilled spirit under the "Cincinnati Gin" trademark, but before the product was officially released, representatives from March First met with Northern Row to discuss its concerns over the use of

the name "Cincinnati Gin" and the possibility of consumer confusion with the CINCINNATI DISTILLING Mark.

     **Answer:**  Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 40 of the Complaint and, therefore, denies such allegations.

     41.    The same day, on April 11, 2023, March First received an email from a representative of Northern Row, indicating that while Northern Row understands the issues raised by March First, Northern Row will be moving forward with the planned release of the distilled spirit under the "Cincinnati Gin" trademark. A true copy of the April 11, 2023 email from Northern Row is attached hereto as **Exhibit H**.

     **Answer:**  Northern Row lacks sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 41 of the Complaint and, therefore, denies such allegations.

     42.    On April 18, 2023, counsel for March First sent a letter to Northern Row detailing March First's rights in the CINCINNATI DISTILLING Mark and CINCINNATI BREWING Marks, and demanding that Northern Row cease use of "Cincinnati Gin" as a trademark in connection with distilled spirits. In the letter, March First also stated that it is willing to come to an amicable resolution if Northern Row would make changes to the usage of "Cincinnati Gin" on the product label such that the term would not be viewed by consumers with source identifying significance, in order to avoid the possibility of confusion with the CINCINNATI DISTILLING Mark. A true copy of the April 18, 2023 letter is attached hereto as **Exhibit I**.

**Answer:** Northern Row admits that on or about April 18, 2023, counsel for March First sent the letter attached as Exhibit I to Northern Row. Northern Row denies the remaining allegations of paragraph 42 of March First's Complaint.

43. On April 27, 2023, counsel for March First received an email from counsel for Northern Row, confirming receipt of the April 18, 2023 letter, and stating that Northern Row denies that there is any likelihood of confusion, and declines March First's suggestion to change its product name or label. A true copy of the April 27, 2023 email from counsel for Northern Row is attached hereto as **Exhibit J**.

**Answer:** Northern Row admits the allegations of paragraph 43 of March First's Complaint.

## COUNT I
### INFRINGEMENT OF REGISTERED TRADEMARK
### (15 U.S.C. §§ 1114)

44. March First incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

**Answer:** Northern Row repeats and re-alleges the allegations of its Answer as if fully set forth herein.

45. March First owns all registered and common law rights in the CINCINNATI DISTILLING Mark. March First's use and registration of the CINCINNATI DISTILLING Mark has priority over Northern Row's use of "Cincinnati Gin" as a trademark for a distilled spirit.

**Answer:** Northern Row denies the allegations of paragraph 45 of March First's Complaint.

46. Under 15 U.S.C. § 1115, the registration of the CINCINNATI DISTILLING Mark is *prima facie* evidence of the validity of the mark and of March First's exclusive right to use the CINCINNATI DISTILLING Mark in commerce.

**Answer:** Northern Row denies the allegations of paragraph 46 of March First's Complaint.

47. March First owns all registered and common law rights in its family of marks, including the CINCINNATI BREWING Marks, each of which have priority over Northern Row's use of "Cincinnati Gin" as a trademark for a distilled spirit.

**Answer:** Northern Row denies the allegations of paragraph 47 of March First's Complaint.

48. As a result of March First's extensive use, sales, advertising, promotional activities, distribution, and the unsolicited media attention and awards from such efforts throughout the United States, March First's CINCINNATI DISTILLING Mark has become well known and accepted by the public and serve to distinguish March First's goods from those of others.

**Answer:** Northern Row denies the allegations of paragraph 48 of March First's Complaint.

49.     Northern Row's use of "Cincinnati Gin" as a trademark in commerce in connection with goods that are identical to those offered and registered under the CINCINNATI DISTILLING Mark, is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of Northern Row with March First as to the origin, sponsorship, or approval of Northern Row's goods or services and constitutes a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**Answer:** Northern Row denies the allegations of paragraph 49 of March First's Complaint.

50.     Northern Row's use of "Cincinnati Gin" as a trademark in commerce in connection with goods that are closely related to those offered under the CINCINNATI BREWING Marks, is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection, or association of Northern Row with March First as to the origin, sponsorship, or approval of Northern Row's goods or services and constitutes a violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

**Answer:** Northern Row denies the allegations of paragraph 50 of March First's Complaint.

51.     Northern Row's conduct has caused, and will continue to cause March First to suffer severe, immediate and irreparable injury for which March First has no adequate remedy at law unless Northern Row is enjoined pursuant to 15 U.S.C. § 1116.

**Answer:** Northern Row denies the allegations of paragraph 51 of March First's Complaint.

52.     As a result of Northern Row's conduct, March First has been harmed and will continue to be harmed. Accordingly, March First is entitled to recover its damages, including Northern Row's profits received as a result of its infringing activities, pursuant to 15 U.S.C. § 1117(a).

**Answer:** Northern Row denies the allegations of paragraph 52 of March First's Complaint.

53.     Damages alone will not provide March First with an adequate remedy at law.

**Answer:** Northern Row denies the allegations of paragraph 53 of March First's Complaint.

## COUNT II
## FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
### (15 U.S.C. § 1125(a))

54.     March First incorporates by reference the allegations contained in the preceding paragraphs as if fully restated herein.

**Answer:** Northern Row repeats and re-alleges the allegations of its Answer as if fully set forth herein.

55.     March First has expended substantial resources, including time and money in building the CINCINNATI DISTILLING Mark, and all associated goods and services thereto, and as a result, the public has come to associate the CINCINNATI DISTILLING Mark with March First, and use those marks to identify March First as the source of March First's products.

**Answer:** Northern Row denies the allegations of paragraph 55 of March First's Complaint.

56.     The continued use by Northern Row of "Cincinnati Gin" as set forth above constitutes unfair competition and violation of the federal Lanham Act, 15 U.S.C. § 1125(a), and violation of March First's exclusive rights to exploit the CINCINNATI DISTILLING Mark.

**Answer:** Northern Row denies the allegations of paragraph 56 of March First's Complaint.

57.     The foregoing conduct of Northern Row further constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a).

**Answer:** Northern Row denies the allegations of paragraph 57 of March First's Complaint.

58.     Northern Row has unjustly profited by its unlawful actions.

**Answer:** Northern Row denies the allegations of paragraph 58 of March First's Complaint.

59.     Upon information and belief, Northern Row has committed the foregoing acts with notice of March First's rights and such actions were willful and intended to cause confusion, to cause mistake, or to deceive.

**Answer:** Northern Row denies the allegations of paragraph 59 of March First's Complaint.

60.     March First has been and will continue to be damaged by Northern Row's unlawful actions.

**Answer:**  Northern Row denies the allegations of paragraph 60 of March First's Complaint.

61.     Northern Row's conduct and acts, as alleged above, will continue to cause irreparable harm to March First unless enjoined by the Court.

**Answer:**  Northern Row denies the allegations of paragraph 61 of March First's Complaint.

62.     Damages alone will not provide March First with an adequate remedy at law.

**Answer:**  Northern Row denies the allegations of paragraph 62 of March First's Complaint.

**<u>COUNT III</u>**
**OHIO UNIFORM DECEPTIVE TRADE PRACTICES ACT**

63.     March First hereby incorporates by reference the preceding paragraphs as if fully restated herein.

**Answer:**  Northern Row repeats and re-alleges the allegations of its Answer as if fully set forth herein.

64.     Upon information and belief, Northern Row's use of "Cincinnati Gin" as a trademark for a distilled spirits, with actual or constructive knowledge of March First's rights in

the CINCINNATI DISTILLING Mark is a willful violation of the Ohio Uniform Deceptive Trade Practices Act, Ohio Revised Code §4165.02, by causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, affiliation, connection or association with March First.

**Answer:** Northern Row denies the allegations of paragraph 64 of March First's Complaint.

65. Upon information and belief, Northern Row's acts of infringement have been committed with the intent to cause confusion and mistake and to deceive.

**Answer:** Northern Row denies the allegations of paragraph 65 of March First's Complaint.

66. March First has been and will continue to be damaged by Northern Row's unlawful actions.

**Answer:** Northern Row denies the allegations of paragraph 66 of March First's Complaint.

67. Northern Row's conduct and acts, as alleged above, will continue to cause irreparable harm to March First as to which it has no adequate remedy at law, unless enjoined by this Court.

**Answer:** Northern Row denies the allegations of paragraph 67 of March First's Complaint.

## COUNT IV

### COMMON LAW TRADEMARK INFRINGEMENT

68.     March First hereby incorporates by reference the preceding paragraphs as if fully restated herein.

**Answer:** Northern Row repeats and re-alleges the allegations of its Answer as if fully set forth herein.


69.     Northern Row's use of "Cincinnati Gin" as described herein constitutes trademark infringement under the common law of the State of Ohio.

**Answer:** Northern Row denies the allegations of paragraph 69 of March First's Complaint.


70.     Upon information and belief, Northern Row's acts of infringement are willful and have been committed with the intent to cause confusion and mistake and to deceive.

**Answer:** Northern Row denies the allegations of paragraph 70 of March First's Complaint.


71.     March First has been and will continue to be damaged by Northern Row's infringement.

**Answer:** Northern Row denies the allegations of paragraph 71 of March First's Complaint.

72.     Northern Row's conduct and acts, as alleged above, will continue to cause irreparable harm to March First as to which it has no adequate remedy at law, unless enjoined by this Court.

**Answer:**  Northern Row denies the allegations of paragraph 72 of March First's Complaint.

## COUNT V
## COMMON LAW UNFAIR COMPETITION

73.     March First hereby incorporates by reference the preceding paragraphs as if fully restated herein.

**Answer:**  Northern Row repeats and re-alleges the allegations of its Answer as if fully set forth herein.

74.     Upon information and belief, the acts described above, namely, Northern Row's use of "Cincinnati Gin" as a trademark in connection with distilled spirits, with actual or constructive knowledge of March First's rights in the CINCINNATI DISTILLING Mark, reflect Northern Row's scheme by which it, without authority, consent or privilege, intended to imitate or pass off its goods as those of March First or as goods that have received the sponsorship or approval of March First. Such conduct constitutes unfair competition in violation of the common law of the State of Ohio.

**Answer:**  Northern Row denies the allegations of paragraph 74 of March First's Complaint.

75.     Upon information and belief, Northern Row's alleged acts of infringement are willful and have been committed with the intent to cause confusion and mistake and to deceive.

**Answer:**  Northern Row denies the allegations of paragraph 75 of March First's Complaint.

76.     March First has been and will continue to be damaged by Northern Row's unfair competition.

**Answer:**  Northern Row denies the allegations of paragraph 76 of March First's Complaint.

77.     Northern Row's conduct and acts, as alleged above, will continue to cause irreparable harm to March First as to which it has no adequate remedy at law, unless enjoined by this Court.

**Answer:**  Northern Row denies the allegations of paragraph 77 of March First's Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Descriptive Fair Use. Northern Row's use is good faith use for a descriptive meaning.

## Second Affirmative Defense

The asserted trademarks lack acquired distinctiveness, are merely descriptive, and fail to function as a mark, rendering the marks invalid and unenforceable and not entitled to trademark protection.

## Third Affirmative Defense

March First has abandoned its trademarks by failing to use them, and by failing to adequately police or enforce them.

## RESPONSE TO PRAYER FOR RELIEF

Northern Row denies that March First is entitled to any of the relief requested in the "Prayer for Relief" section contained in March First's Complaint.

## COUNTERCLAIM

For its Counterclaim against March First Manufacturing, LLC ("March First"), OTR Distillers, LLC dba Northern Row Brewery ("Northern Row") alleges as follows:

## NATURE OF THE COUNTERCLAIM

1. This is an action for declaratory judgment of invalid trademark registrations and an order directing the cancellation of the invalid trademark registrations.

## PARTIES

2.      Northern Row is an Ohio Limited Liability Company with a principal business address located at 111 West McMicken Ave., Cincinnati, Ohio 45202.

3.      Upon information and belief, March First is an Ohio Limited Liability Company with a principal business address located at 7885 East Kemper Road, Cincinnati, Ohio 45249.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this Counterclaim pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202, and Section 39 of the Lanham Act, 15 U.S.C. §§ 1121, 1119, because the Counterclaim relates to the trademark infringement claims raised by March First in its Complaint against Northern Row, based on March First's registered marks, and is so related to the claims in the Complaint that it forms part of the same case or controversy and arise out of common facts, transactions, or occurrences.

5.      This Court has personal jurisdiction over March First, an Ohio limited liability company, which upon information and belief has a principal place of business in located at 7885 East Kemper Road, Cincinnati, Ohio 45249, and which has filed the Complaint in this matter.

6.      Venue in this judicial district for this Counterclaim is proper under 28 U.S.C. §§ 1391(b)-(c), in that March First maintains its principal place of business in this district and that this district is where a substantial part of the events or omissions giving rise to the Complaint and Counterclaim occurred.

**COUNT ONE: DECLARATORY JUDGMENT OF INVALID
TRADEMARKS AND ORDER DIRECTING THE CANCELLATION
OF THE INVALID TRADEMARK REGISTRATIONS**

7.      Northern Row incorporates the allegations contained in paragraphs 1 through 6 of the Counterclaim and its Answer to March First's Complaint, as if fully recited herein.

8.      This Counterclaim arises out of the same transactions and occurrences that are the subject matter of March First's Complaint against Northern Row.  As a defendant to the claims asserted by March First in its Complaint, Northern Row has standing to challenge the validity of the registrations of March First.

9.      Under 15 U.S.C. §1119, in any action involving a registered mark the Court may determine the right to registration, order the cancellation of registrations, in whole or in part, and otherwise rectify the register with respect to the registrations of any party to the action.  This Count One seeks cancellation of the March First U.S. Registration No. 6522220 for March First's CINCINNATI DISTILLING & Design mark on grounds that the mark lacks distinctiveness, is merely generic or descriptive, is merely decorative, and fails to function as a mark, and therefore is not entitled to trademark protection. In addition, March First abandoned U.S. Registration No. 6522220 for March First's CINCINNATI DISTILLING & Design mark by failing to use, and to adequately police or enforce, that mark.

10.      March First's CINCINNATI DISTILLING & Design mark describes an ingredient, quality, characteristic, function, feature, purpose, geographic location, and/or use of

the goods or services specified in U.S. Registration No. 6522220.

11.     Under 15 U.S.C. §1119, this Count One also seeks cancellation of the March First U.S. Registration No. 6734827 for March First's CINCINNATI BREWING CO. & Design mark on grounds that the mark lacks distinctiveness, is merely generic or descriptive, is merely decorative, and fails to function as a mark, and therefore is not entitled to trademark protection. In addition, March First abandoned U.S. Registration No. 6734827 for March First's CINCINNATI BREWING CO. & Design mark by failing to use, and to adequately police or enforce, that mark.

12.     March First's CINCINNATI BREWING CO. & Design mark describes an ingredient, quality, characteristic, function, feature, purpose, geographic location, and/or use of the goods or services specified in U.S. Registration No. 6734827.

13.     Under 15 U.S.C. §1119, this Count One also seeks cancellation of the March First U.S. Registration No. 6874955 for March First's CINCY BREWING CO. & Design mark on grounds that the mark lacks distinctiveness, is merely generic or descriptive, is merely decorative, and fails to function as a mark, and therefore is not entitled to trademark protection. In addition, March First abandoned U.S. Registration No. 6874955 for March First's CINCY BREWING CO. & Design mark by failing to use, and to adequately police or enforce, that mark.

14.     March First's CINCY BREWING CO. & Design mark describes an ingredient, quality, characteristic, function, feature, purpose, geographic location, and/or use of the goods or

services specified in U.S. Registration No. 6874955.

15. Accordingly, U.S. Registration No. 6522220, U.S. Registration No. 6734827, and U.S. Registration No. 6874955, should be cancelled.

## **PRAYER FOR RELIEF**

Northern Row respectfully prays for judgment as follows:

1. An order and judgment dismissing, with prejudice, each of Plaintiff's claims in the Complaint;

2. A declaration and judgment that Northern Row has not infringed any valid trademark owned by Plaintiff, and has not unfairly competed with Plaintiff;

3. A declaration and judgment that Plaintiff's registered marks, including U.S. Registration No. 6522220, U.S. Registration No. 6734827, and U.S. Registration No. 6874955, lack distinctiveness, are merely generic, are decorative, fail to function as a mark, and are descriptive, and therefore are not entitled to trademark protection;

4. An order canceling Plaintiff's U.S. Registration No. 6522220, U.S. Registration No. 6734827, and U.S. Registration No. 6874955, pursuant to 15 U.S.C. § 1119;

5. An order that preliminarily and permanently enjoins Plaintiff and its agents from making false and misleading claims regarding Northern Row's right and ability to conduct lawful business;

6. An order that preliminarily and permanently enjoins Plaintiff and its agents from asserting exclusive rights over the terms and marks being asserted in the Complaint;

7. For attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a);

8. For attorneys' fees and costs pursuant to Ohio Rev. Code § 4165.03(B);

9. For costs of suit incurred herein; and

10. For such other and further relief as the Court may deem to be just and proper.


## NORTHERN ROW'S JURY DEMAND

Northern Row demands a trial by jury for all issues so triable.



Dated: <u>August 25, 2023</u>              Respectfully submitted,

                                          *s/ Brett A. Schatz*
                                          Brett A. Schatz (Ohio Bar No. 0072038)
                                          Trial Attorney
                                          WOOD HERRON & EVANS LLP
                                          600 Vine Street, Suite 2800
                                          Cincinnati, Ohio 45202
                                          Email:        bschatz@whe-law.com
                                          Telephone:    (513) 241-2324
                                          Facsimile:    (513) 241-6234

                                          Counsel for Defendant
                                          OTR Distillers, LLC dba Northern Row Brewery

## CERTIFICATE OF SERVICE

I hereby certify that, on August 25, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system and a copy of the foregoing will be served upon counsel of record by the Court's ECF system.

*s/ Brett A. Schatz*
Brett A. Schatz (Ohio Bar No. 0072038)
Trial Attorney
WOOD HERRON & EVANS LLP
600 Vine Street, Suite 2800
Cincinnati, Ohio 45202
Email:        bschatz@whe-law.com
Telephone:    (513) 241-2324
Facsimile:    (513) 241-6234

Counsel for Defendant
OTR Distillers, LLC dba Northern Row Brewery
